JAMES DUNLAP, Appellant, *v.* DAVID A. SMITH, *et al.*, Assignees of the Bank of Illinois, Appellees.

### APPEAL FROM SANGAMON.

A debtor of the Bank of Illinois is authorized to discharge his indebtedness in the notes and certificates of the Bank; unless it shall appear, that the indebtedness arose as a subscription for bank stock.

The term *stock note* has not a technical meaning.

The facts of this case, and the judgment rendered upon it, will be found, *ante* page 184.

After the decision in this Court had been returned to the San-gamon Circuit, Dunlap entered his motion, that satisfaction of said judgment be entered, to the extent of twenty-eight thousand one hundred and twenty-seven dollars and thirty-five cents, or such part thereof as he may be entitled to a credit for, and in support of said motion, filed an agreement of the parties, made since the rendition of said judgment; whereupon the plaintiff, in resistance of said motion, produced in evidence the record of said judgment, with the previous agreed case (see ante 184) and all the papers and entries in the cause; and after argument, the Circuit Court, Davis, Judge, presiding, at March term, 1851, overruled the motion and gave costs against Dunlap. And thereupon, on motion of Dunlap, an appeal was granted. The bill of exceptions taken on the motion, in addition to the agreed case, (ante 184,) states, that it is agreed that since the rendition of said judgment, to wit, on the 13th day of January, 1851, the plaintiffs have received on account of said judgment, of and from the defendant, in the notes of the Bank of Illinois, $10,311.00, and in the certificates of said Bank, in substance and form as pro-vided in the sixteenth section of the act concerning said Bank, passed February 15th, 1843, $17,816.35; and that said defend-ant (Dunlap) claims the right to pay said judgment in the notes

and certificates of said Bank, at par, which claim the plaintiffs deny; that said defendant shall enter a motion in the Court aforesaid, to have satisfaction of said judgment entered, to the extent of the notes and certificates received, or either of them as aforesaid; that when the Court decides said motion, the losing party may take the case to the Supreme Court, sitting at Ottawa in June [then] next, by writ of error or appeal, without bond or security; that if the Supreme Court decide that said motion should be sustained, so it is to be; and if it decide that said motion should be overruled, the said plaintiffs are to hold said notes and certificates, subject to the order of said defendant.

S. A. DOUGLAS, S. T. LOGAN & J. A. McCLERNAND, for Appellant.

A. LINCOLN, for Appellees.

TRUMBULL, J. This same case came before the Court at its last term at Springfield, and the amount of Dunlap's liability was fixed by the decision made at that time.

He now claims the right to discharge the judgment then entered against him in the notes and certificates of the Bank, which is the only question now involved in the case. In determining this question, it becomes important to look to the nature and origin of Dunlap's indebtedness, and also to the laws in force at the time it was incurred.

On the 22d of December, 1842, the Legislature passed "An act in relation to the State Bank of Illinois and Bank of Illinois," which delares, "That all debts and demands due, by note or otherwise, unto the president, directors, and company of the Bank of Illinois, or to the State Bank of Illinois, or that may hereafter become due unto either of said banks, may after or before suit brought thereon, be discharged and paid in the notes and bills of said banks respectively, to which said debt or demand may be due, whether the same be in the possession of said bank or banks, or assigned or transferred to any corporation, person or persons."

The contract which was the foundation of the judgment against Dunlap, bore date February 20, 1843, nearly two months after the foregoing act was passed; and he would clearly have the

Dunlap v. Smith et al.

right to discharge it according to the provisions of that act, unless there was something in the character of the contract, to make it an exception to the general provisions of the law. Such it is insisted is the case, from the fact that the contract is described in the transfer of the assets of the bank, *as a stock note.* All the information we have upon that subject, is what is contained in the agreed case upon which the judgment was rendered. That agreement states, that the president, directors, and company of the Bank of Illinois, on the tenth day of April, 1845, pursuant to an act of the Legislature passed "Feb. 28, 1845, under their corporate seal and the signature of their president [the said Dunlap] and cashier, *assigned said note as a stock note*" to the assignees of said bank. Admitting that by the assignment thus made, Dunlap is estopped from denying that the note was a *stock note,* and the question arises, How does it change his right to discharge the amount due upon it, in the notes of the bank?

It will be borne in mind, that the record is wholly silent as to the consideration of the note, or the circumstances under which it was given. All we know is, that it was assigned as a stock note. The record does not even contain a copy of the note, and whether it was given on account of an original subscription for stock, or on a purchase of stock which the bank may have been authorized to sell, does not appear.

If it could be gathered from the record that it was given on account of a subscription to the stock of the bank, made previous to the passage of the law of Dec. 22, 1842, and upon the faith of which bills had been issued and liabilities incurred by the bank, which still remain unpaid, we should have no hesitation in holding that it was not a debt or demand within the purview of the act of Dec. 22, 1842, and which the debtor could discharge in the notes of the bank. The stock of a bank paid in and subscribed for, constitutes a fund for the payment of the liabilities of the bank. To allow a stockholder, who at the time of his subscription was required by the charter of the bank to pay for his stock in specie, subsequently to discharge that subscription, after the bank had become insolvent, in its depreciated bills, would be equivalent to allowing him to withdraw a part of that fund upon the faith of which the bills had been issued, and would be manifestly unjust, as well to stockholders who were

26

not in debt for their subscriptions, as to the creditors of the bank. To such a case much of the reasoning in the case of King *v.* Elliott, 5 Smedes & Marshall, 428, would be applicable.

The record before us, however, discloses no such case, and it is not for the Court to make a case for the plaintiff. The term *stock note* has no technical meaning, and may as well apply to a note given on the sale of stock which the bank had purchased or taken in the payment of doubtful debts, as to a note given on account of an original subscription to stock.

Here the record not only fails to show, that the consideration of the note was an indebtedness for stock, existing prior to the passage of the act of Dec. 22, 1842; but in the absence of all evidence, the presumption is, that the consideration was a liability incurred for the first time, at the date of the note. If so, the law under which the contract was made became part of it, and Dunlap's right to discharge it according to the provisions of that law, is unquestionable.

On the 25th day of February, 1843, five days after the date of the note given by Dunlap, and before it became due, an act was passed for putting the Bank of Illinois into liquidation; which provides, among other things, for paying out the specie of the bank then on hand *pro rata*, among its creditors, and for issuing certificates for the balances due; which certificates, the act declares, shall be received in payment for any debt due or to become due the bank. By this act, certificates are placed upon the same footing as notes in the payment of debts; in fact there is now no difference between them, certificates having the same market value as notes.

The judgment against Dunlap comes directly within the terms of the acts authorizing the debtors of the bank to discharge their liabilities in its notes and certificates; and as has been already shown, there is nothing in the nature of the judgment or the contract upon which it is founded, as disclosed by the record, to distinguish it, so far as relates to the mode of payment, from the ordinary debts due the bank.

The case of King *v.* Elliott is distinguishable from this, in several particulars. In that case, the delinquent stockholder was garnisheed by a creditor of the bank, before the passage of the act providing that garnishees who were indebted to it should have the right to discharge their indebtedness in the notes of

the bank; moreover, it did not appear in that case, that the garnishee held the notes of the bank, when he was garnisheed; and as the claim was then transferred by law, no offset subsequently acquired could avail him.

It is to be regretted that, in so important a case as this, the parties have not thought proper to bring before the Court the whole transaction out of which Dunlap's indebtedness arose. Had this been done, it is possible that the Court might be called upon to pronounce a different judgment; but as the case is presented in the record, by which alone the Court must be governed, Dunlap's right to discharge the judgment in the notes and certificates of the bank, is clear.

The judgment of the Circuit Court is reversed, and the cause remanded.

*Judgment reversed..*