16L 111
3pi 406

16L 111
f116  517

THE STATE *v.* NASHVILLE SAVINGS BANK *et al.*

1. AMENDED BILL. *When it is in effect an original bill. Depositions. Against whom not to be read.* An amended bill, as to defendants brought before the court for the first time, is in effect an original bill, and no deposition previously taken will, over the objection of the new defendants at the hearing, be permitted to be read against them as evidence or admission.

2. PRIVILEGE TAX. *Against whom it is a debt.* A privilege tax is a debt against any person who carries on the business charged therewith, and may be sued for accordingly.

The State *v.* Nashville Savings Bank.

3. ACCRUED TAX. *Repeal of statute levying the tax. Effect of.* The repeal of a statute levying a privilege tax will not, under the Code, section 49, affect the liability of a person against whom the tax had accrued.

4. BROKER'S TAX. *To what it does not apply.* A bank authorized by its charter to deal in public and private securities, is not liable to a broker's tax for buying and selling stocks and bonds.

5. HOW TO DETERMINE WHETHER A BANK IS A SAVINGS BANK. Whether a bank is a savings bank, within our revenue laws, depends not upon its name but its charter powers, and if it be a bank authorized to do a general bankng business it will be taxed accordingly.

6. BANKS. *When liable for charter tax.* Where a bank was, by its charter, required to pay annually a tax of one-half of one per cent. on its capital stock, and afterward claimed, and was allowed by the State officials to pay, in lieu, a tax on its surplus as a savings bank, when it was in fact not a savings bank except in name, it was held liable for the charter tax, subject to a deduction for the taxes erroneously paid.

7. SAME. *Rate of taxation by charter of. Continuation of rate.* A rate of taxation fixed by the charter of a bank, although not an exemption from other taxes, will continue until the Legislature sees proper to change it.

8. CORPORATE CHARTERS. *Tax provisions of. How affected by general law of taxation.* A general law on the subject of taxation will not affect or repeal the provisions of a charter of incorporation on the same subject, unless plainly so intended.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

CHAMPION & HEAD and J. B. DANIELS for complainant.

JOHN RUHM for defendant.

COOPER, J., delivered the opinion of the court.

The original bill in this case was filed on October

4, 1883, against the Nashville . Savings Bank, alleged
to be regularly incorporated under the laws of Ten-
nessee by an act passed May 24, 1866, for the pur-
pose of doing a general banking business, and as such
properly and legally organized, and ever since that
time and now doing a general banking business in
Nashville, under the provisions of the charter referred
to.    The object of the bill was to recover from the
defendant an annual tax of one-half of one per cent.
on the capital stock, which the bank was required by
its charter to pay into the public treasury, for the
use of common schools; to recover also the banker's
privilege tax, levied by the acts of 1881 and 1883, and
the tax on brokers, levied all the time, though varying
in amount, during the existence of the bank, together
with interest and the penalties incurred for failing to
pay promptly, upon the allegation that the bank had
been carrying on the business of a broker by buying
and selling bonds and stocks for others.    The defendant
demurred to the bill, but the demurrer was overruled.
It then answered, admitting that it was chartered by
the Legislature, and had been conducting a banking
business under its charter, but denying that it ever
engaged in a general brokerage business.    It admitted
that for a time after its organization it paid to the
then State officials for the use of common schools the
tax which, under the construction of those officers,
was required to be paid by the charter.    It averred
that afterward, and after the passage of the act of
March 1, 1869, chapter 45, the provisions of which,
in regard to banks and savings banks, have been re-

newed by every subsequent Legislature, the defendant
was advised by the State officers that the provisions
of the charter were superseded by the act. Thence-
forward, the defendant's officers annually made state-
ments under oath to the State, county and city tax
assessors of the gross sum of their surplus earned and
in possession of the bank, in accordance with section
14 of the act of 1869, and paid the taxes assessed
thereon. It claims to have regularly paid all the
taxes demanded by the State officials, and denies any
further liability.

On May 4, 1885, after all the proof had been taken
in the cause, the defendant was permitted to file an
amended answer, in which it conceded that under a
recent decision of this court it would probably be held
liable for the annual tax provided for in the charter,
and asking in that event that it be allowed credit for
payments made by it under the assessments of the act
of 1869, and subsequent acts renewing its provisions.
The answer also insisted that by the terms of the de-
fendant's charter it is exempted from all other taxes
required to be paid by others who follow the same
occupations.

At the time the defendant was permitted to file an
amended answer, the complainant obtained leave to file
an amended bill, which was filed accordingly. This
amended bill made Max Sax and Julius Sax co-de-
fendants with the Nashville Savings Bank. After re-
peating the allegations of the original bill, it alleged
that the new defendants had purchased the chartered
rights and franchises of the Nashville Savings Bank

from the original incorporators, or a portion of them; that said transaction was an absolute sale, and change of ownership *in toto*, and not a continuation of the corporation by a transfer of stock; and that immunity from taxation, if it ever existed in favor of the original corporators, or their successors, would not pass by such a transaction, and that the purchasers did not acquire a right to be a corporation, and became individually liable for all the transactions of the Savings Bank. The amended bill further charged that the said Julius and Max Sax had been carrying on a general banking business, and a general brokerage business in the name of the said bank. It asked, in addition to the prayer of the original bill, that these new defendants be held personally liable for the various taxes sought to be recovered.

Julius and Max Sax filed an answer to the amended bill, in which they say that they are and have been the president and cashier, respectively, of the Nashville Savings Bank, and as such have conducted a banking business under its charter, and that they never, as individuals, engaged in the banking or brokerage business. No proof was taken or introduced after the filing of the amended bill.

The chancellor, upon final hearing, held the bank liable for the annual tax provided for in the charter, subject to a deduction of the amounts paid to the State upon the assessments made under the act of 1869 and subsequent acts, and he ordered an account accordingly. He dismissed the amended bill with costs. The State alone has appealed.

The amended bill was properly dismissed. No proof was introduced to sustain its averments. As to the defendants brought before the court for the first time, it was in effect an original bill: *Morgan* v. *Morgan,* 10 Ga., 297. And, upon the plainest principle of justice, no deposition will be admitted to be read against a party brought in after it was taken, or too late to exercise the right of cross-examination. "No case," says the vice-chancellor in *Pretty* v. *Parker,* cited in Coop. Temp. Cot., 38, "is wanted for that. The thing is too plain. How can any one be bound by the evidence of witnesses taken in a cause to which he was no party, and whom he has had no opportunity of cross-examining? To hold him bound would be to break in upon the most obvious principles of justice." See also *Jenkins* v. *Bisbee,* 1 Edw. Ch., 377; *Pratt* v. *Barker,* 1 Sim., 1. And what cannot be read as a deposition can not be read as an admission, unless it has been properly introduced as evidence. Objection was taken at the hearing, which was in time. The rule of court requires exception to be taken in advance of the hearing to a deposition for want of notice, or other informality going to its admissibility: Ch. Rules, 2, sub-sec. 5. But the party may always object at the hearing to the reading of a deposition in a cause in which it appears on its face not to have been taken: *Ross* v. *Cobb,* 9 Yer., 463; *Railroad* v. *Atkins,* 2 Lea, 248.

The litigation is, therefore, confined to the original bill. The defendant demurred to the bill upon the ground that the remedy of the State for the en-

forcement of the taxes sought to be recovered is limited to the mode prescribed by the statute, namely, by distraint, and that a bill in chancery will not lie unless something more is done than, the fixing of the tax by statute to make it a debt. I have, myself, had grave doubts whether a privilege tax not charged by the proper officer on the individual during the year it would be due, can be considered a debt of that individual, so as to be sued for as such, any more than omitted property tax, and whether the officers of subsequent years have any more right to collect such privilege tax, without express legislative authority, than a tax on omitted property. And it seemed to me that the same evil would follow to the citizen from allowing officers to go back from fifteen to twenty years to collect privilege taxes as to collect property taxes. But my brother judges have not felt the same doubts, and have held that privilege taxes, because the amount is fixed by the statute and the individual may be shown to have carried on the business charged therewith, may be sued for as a debt in any court having jurisdiction thereof: *The State and Davidson County* v. *Hirsch Bros.*, 16 Lea, 40. And we have repeatedly held, that if the tax is a debt, the remedy prescribed by the statute is merely cumulative. The above causes of demurrer are, therefore, not well taken.

It is also assigned as a cause of demurrer that the statutes, under which many of the taxes claimed were levied, have been repealed, without any saving clause as to taxes accruing under them, and therefore cannot be enforced. This was the rule of the common law.

But a provision was embodied in our Code expressly to change this rule. That provision is: "The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed": Code, section 49. We have held that the statute applies even in criminal cases: *Richardson* v. *State*, 3 Cold., 122; *Hill* v. *State*, 5 Lea, 725, 730.

The bill cannot be sustained in so far as it seeks to charge the defendant with a privilege tax from carrying on the business of a broker. The proof shows that the bank, since the year 1881, inclusive, has bought and sold public stocks and bonds for others, but in all such cases selling stocks or bonds which it then owned, or bought itself for the customer. In no instance is it shown to have acted as an agent or middle man, charging a commission for its services. The facts proven bring the case precisely within the case of *State* v. *Duncan*, 16 Lea, 75. The business is not that of a regular and general broker within the meaning of our revenue laws. The defendant's charter, moreover, authorizes it to "deal in public and private securities," and we held at the last term at this place, that these words in a bank charter conferred upon the bank, as part of its banking privileges, the right to purchase public stocks and bonds and to sell them to third persons, as was done in the case before us, without subjecting the bank to a broker's tax in addition: *Life Deposit & Trust & Banking Company* v. *Eastman*, manuscript opinion of Judge Freeman.

The liability of the defendant for taxes due the

State upon the business of banking alone remains to be considered. On May 24, 1866, the Legislature, by chapter 116, section 30 of the printed acts of the session of 1865–6, constituted three persons named a body politic and corporate, under the name and style of the Nashville Savings Bank, "with all the powers and privileges enjoyed by, and subject to all the restrictions, pains and penalties mentioned in an act passed December 13, 1865, entitled an act to charter a bank of discount and deposit at Dandridge." When we turn to the act referred to, passed at an earlier day of the same session, we find a regular bank charter containing a number of sections. By the first section it is provided that the corporation created, shall have all the powers necessary and proper to carry on the business, and effect the objects contemplated by the act, "but subject in the exercise of the powers herein conferred, to such public and general statutes, so far as the same may be applicable to this act, as may be enacted hereafter in regard to banks, banking and brokers." Section 7 is: "That in consideration of the franchise said corporation shall pay into the public treasury, for the use and benefit of common schools, an annual tax of one-half of one per cent. for its capital stock." By section 10 "the power to alter or amend is reserved to the Legislature." On March 1, 1869, by an act amending the revenue laws of the State, the Legislature provided that no tax should thereafter be assessed upon the capital of any bank, but the stockholders should be assessed and taxed on the value of their shares of stock, the real estate of

the bank being subject to taxation as other realty. By section 14 of this act: "The privileges and franchises granted by the Legislature of the State to savings banks, or institutions for savings, are hereby declared to be personal property and liable to taxation as such in the town, ward or civil district where they are located, to an amount not exceeding the gross sum of their surplus earned and in the possession of said banks or institutions": Act of 1869, 45, 14. These provisions of the act of 1869 have been repeated in all the subsequent revenue acts.

Shortly after the passage of the act of 1869, the defendant, through its solicitor, brought the attention of the State authorities to its provisions, and it seems to have been agreed that they did change the liability of the defendant for taxes, the defendant claiming the benefit of the fourteenth section of the act as a savings bank. From that time forward, the defendant undertook to return to the assessors for taxation the gross sum of its surplus earned each year, which was assessed accordingly, the defendant paying, and the collecting officers receiving the taxes thus ascertained for the State, county and city. The defendant had previously paid into the State treasury the one-half of one per cent. on its capital stock, under the seventh section of its charter. By the revenue act of 1881, the Legislature, for the first time, levied a privilege tax on banks and banking, which tax was continued by the act of 1883. The contention of the complainant is, that the defendant is liable for the annual tax of one-half of one per cent. on its capital stock, as

fixed by the charter, and also to the privilege taxes of the acts of 1881 and 1883, together with interest, and the penalty prescribed for the failure to pay the privilege taxes promptly as required by law.

At the last term of this court, the construction of the fourteenth section of the act of 1869 came before this court for the first time, and it was held that whether a bank was a "savings bank" within the meaning of that section must be determined, not by the name given to it in its charter, but by its organization, powers and mode of doing business, as provided in its act of incorporation: State v. Lincoln Savings Bank, 14 Lea, 42. It was this decision that led the defendant to apply for leave to amend its answer, and to file an amended answer in this case. For the organization, powers and mode of doing business as provided in the defendant's charter were those of a bank doing a general banking business. It had conducted its business accordingly, and was in no sense a savings bank within the meaning of the revenue laws, nor entitled to pay taxes under the provision in question. And the defendant, as it virtually concedes by not appealing from the chancellor's decree, is liable to pay to the State the one-half of one per cent. on its capital stock under its charter, from the time it ceased to make such payments. But we concur with the chancellor in the opinion that the defendant is entitled to a deduction for the amounts paid by it to the State upon the assessments under the act of 1869 and subsequent acts, because the change in the taxation was acquiesced in by the State author-

ities, and the defendant ought not to suffer for payments made in accordance with their demands. The chancellor's decree is, therefore, to this extent correct.

The remaining question is as to the liability of the defendant under the acts of 1881 and 1883, imposing a privilege tax on banks and banking. The defendant does not claim that the provisions of the seventh section of the charter, fixing a tax on the capital stock, amounts to an exemption from other taxation. This it could scarcely do after its own abandonment of that provision for so many years, and in view of the decision in *Wilson* v. *Gaines*, 9 Baxt., 546. The contention is, that the requirement of the charter is a consideration to be paid for the privilege of exercising the franchise, and a rate of taxation prescribed. And so it undoubtedly is, and will continue, until the Legislature sees proper to change it, which it may do by the power reserved in the tenth section of the charter, or by a general law disclosing a clear intention to that effect. Ordinarily, a subsequent law, which is general, does not operate as a repeal of a special law upon the same subject, without express words declaring an intention to repeal: *Ottawa* v. *LaSalle*, 12 Ill., 399. And therefore a general law will not repeal or affect the provisions of a special charter unless plainly so intended: *State* v. *Wilson*, 12 Lea, 246, 251; *Mayor* v. *Dearmon*, 2 Sneed, 104, 120; *State* v. *Branin*, 23 N. J. Law, 484. Or, as it has been more emphatically expressed by the Supreme Court of New Jersey, "the provisions of a charter shall not be altered or repealed except by express words": *State*

v. *Minter*, 23 N. J. Law, 529.    In the two cases last cited the question was raised by a conflict in the matter of taxation between the provisions of a charter and a subsequent general law.    In the last case, the charter of a railroad company exempted its property from taxation until the net proceeds of the road should amount to seven per cent. on its cost, but also reserved to the Legislature the power of alteration and repeal.    It was held, upon the principle above stated, that the exemption of the charter was not affected by a subsequent general tax act declaring all lands liable to taxation, and repealing all acts and parts of acts inconsistent with its provisions.    The complainant's counsel insists that the closing paragraph of the first section of the charter, which we have quoted above, changes this rule, and opens the corporation to such public and general statutes as may be thereafter enacted in regard to banks, banking and brokers.    But we think the clause only refers to general statutes regulating the exercise of the powers conferred, and not to statutes which would completely change specific provisions of the charter.

The decree of the chancellor will be affirmed with costs, and the cause remanded for further proceedings.