## PAWNBROKERS' LICENSES.

[Circuit Court of Lucas County.]

ISAAC KOPELMAN v. CITY OF TOLEDO.

Decided, March 27, 1907.

*Municipal Corporations—License Fees—Power of Municipality to Recover—Duration of Pawnbroker's License—Debt for, Incurred without Applying for a License, When—Sections 4388 and 1536-100.*

1. The year covered by a pawnbroker's license begins when the application for the license is made and the fee paid and runs until the corresponding day of the following year.
2. A debt to the municipality is incurred, for a license fee required by ordinance to be paid, by carrying on the business for which such license fee is imposed; and this is so though the ordinance may prescribe penalties for the carrying on of the business without a license, and though no license has been applied for or issued.

There was cited for the city as to the power of municipality to recover license fees: City ordinances (Toledo) pages 369; *Cincinnati* v. *Beauhausen*, 22 Bull., 421; *State* v. *Hibbard*, 3 Ohio, 63; *State* v.*Gazlay*, 5 Ohio, 14; Dillon, Mun. Corp. (4th Ed.), Section 818; Cooley, Taxation (3d Ed.), 836; *Philadelphia* v. *Telephone Co.*, 109 Fed. Rep., 55; *Templeton* v. *Tekamah*, 49 N. W. Rep., 373; *State* v. *Green*, 42 N. W. Rep., 913; *New York (Mayor)* v. *Railway*, 23 N. E. Rep., 550; *State* v. *Bank*, 84 Tenn., 111; *New Castle* v. *Electric Co.*, 16 Pa. Co. Ct. Rep., 663; *Mendocino Co.* v. *Bank*, 24 Pac. Rep., 1002; *Johnson* v. *Armour*, 12 So. Rep., 842.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

Error to Lucas Common Pleas Court.

On August 28, 1906, the city of Toledo brought an action against Isaac Kopelman to recover from him $100, which the city claimed was due from him as a debt to the city on account of his having carried on the business of pawnbroker in the city from March 1, 1905, until March 1, 1906. Kopelman denied that he was indebted to the city on this account, and plead specially that on July 5, 1904, he paid a license fee of $100 to the city, where-

upon a license was issued to him by the mayor of the city, licensing him as a pawnbroker. For how long a period this license was to run is not stated in the answer and is not made apparent by the record. Assuming that under the law it would necessarily run for a year, it would not expire until July 5, 1905, and the result would be that for part of the time that the city charges that Kopelman was carrying on the business of a pawnbroker, on account of which he owes the city $100, he was duly licensed and had paid the license fee.

It appears that on October 2, 1893, the city of Toledo passed an ordinance providing for the licensing of pawnbrokers and other lines of business, and it was therein provided that the annual fee for carrying on the business of a pawnbroker should be $100, and that the fee should cover the year from the first day of March of any year until the next succeeding first day of March. And the ordinance provided penalties in the form of fines to be imposed upon those who should carry on business without paying the fee and procuring a license.

This ordinance appears to have been passed under authority of a special act passed on behalf of the city of Toledo, appearing in 90 O. L., 335. I believe that would bring the date of the act some time in 1892. It appears in the revision of 1897 of Bates' Annotated Ohio Statutes as Sections 2672-113 to 2672-117. By the new municipal code, as first passed in 1902, these sections were repealed, so that the foundation and support of the ordinance appears to have been taken away. It may be remarked that perhaps it never had very much foundation or support, because the statute was clearly of a general nature though special and limited in territorial scope, so that it was unconstitutional. But whatever there was of it was taken away by the new municipal code.

In Sections 1692 and 1692-1 of the code as they existed prior to 1902 (Section 1536-100, Revised Statutes), defining the powers of the municipalities, there was no provision for licensing pawnbrokers; and we can find in the law as it then existed no authority therefor to the municipality other than the special act to which I have just referred, unless it may be found in Section 4388, Revised Statutes, which either gives or recognizes authority to

pass an ordinance fixing the amount of the fee for a pawnbroker's license. That section is found in chapter 13, title 5, on the subject of pawnbrokers. It reads:

"The mayor of any municipal corporation may grant a pawnbroker's license to any person of good moral character who may apply therefor, when the applicant pays into the treasury of the corporation a sum to be fixed by ordinance, not to exceed two hundred dollars per annum, and executes a bond, with surety, to the satisfaction of the mayor, to the municipal corporation, in the sum of five hundred dollars, that the applicant will conform to the requirements of the law and ordinance of the corporation."

So the amount may be fixed by ordinance of the corporation (if that is a statute conferring authority), and the bond may be executed requiring the applicant to conform to the requirements of an ordinance of the corporation, but, of course, the ordinance of the corporation should not contain provisions beyond those expressly authorized by law.

By the new municipal code, as passed in 1902, no authority was conferred upon municipalities to license pawnbrokers or to in any way regulate their business, or to legislate upon the subject; but an amendment of Section 7 of that code, passed April 20, 1904 (97 O. L., 509; Section 1536-100, Revised Statutes), it is provided that all municipal corporations shall have the power to regulate and license pawnbrokers, and other lines of business mentioned in the statute.

This ordinance was not passed in pursuance of that statute. The ordinance was passed a long time before the statute was enacted. It may be very questionable whether the ordinance, having once failed of support by reason of the statute authorizing it having been repealed, can afterward be revived and supported by the enactment of a new statute which would seem to authorize such municipal legislation; but we do not feel called upon to discuss that question.

We decide this case upon the assumption that there was no authority for this ordinance in the year for which the city sues other than that found in Section 4388, Revised Statutes, and that, therefore, all of the provisions of this ordinance must fail, must .

be held to be invalid and without support excepting the provision that the amount of the license fee shall be $100. And we decide the case upon the assumption that the license which was issued to Mr. Kopelman on July 5, 1904, was issued for a year, under and in pursuance of Section 4388, Revised Statutes, or that, at least, it would protect him for a year—the $100—it would pay his license fee for one year from that date. But even upon that assumption, we think that the judgment of the court of common pleas, which was in favor of the city, should be sustained, for it is admitted in the record that Mr. Kopelman carried on this business the whole of the year running from March 1, 1905, to March 1, 1906. Therefore, it is admitted that he carried on this business between July 5, 1905, and March 1, 1906. Certainly his privilege, by reason of his having paid the license fee, did not extend beyond July 5, 1905, and the moment he began carrying on the business after that period without a new license fee for another period of one year having been paid, be became liable to the city for such license fee. And we assume that the true construction of this statute is, that it would be a license fee for another year, for there is no provision for licensing for a shorter period. Mr. Kopelman, then, carried on business after July 5, 1905, after his former license had expired, and he became indebted to the city for another year, and the privilege was with him either to continue the business for a full year or to discontinue it. In either event, his indebtedness would be for the whole fee of $100.

This action was not brought until some time in August, 1906, so that at that time the year had expired, whether we count from March 1, 1905, or from July 5, 1905; and it is our judgment that the city would not be called upon to wait until the year had expired but could begin the action as soon as the year had begun; that the debt would then accrue and be due and payable. If it should be made to appear in any case that the city was endeavoring to recover for a period between the first day of March of any year and the fifth day of July covered by a fee already paid—a thing that does not distinctly appear here, or does not necessarily follow here—then we would be brought to a position where we would be bound to meet and decide the question of whether it was competent for the city to provide that the year for license

privileges, upon payment of these license fees, should begin upon any certain day of the calendar year, as it has here provided. We do not think that question is necessarily involved here, and yet we express the opinion that at this period it was not competent for the council so to provide, but that, under Section 4388, Revised Statutes, the year began when the application for the license was made and the fee paid, when the license issued, and that the year would run until the corresponding day of the following year.

The question has been raised and discussed as to whether the city can recover at all by a civil action in a case where it is provided that a license shall issue upon the payment of a certain fee therefor, where it also appears that the license was not applied for and was not issued and the fee was not paid; it being urged on behalf of plaintiff in error that in such case the city is remitted to its right to prosecute for the penalty, and, upon the hearing of the case, some of us, at least, were inclined to that view. It seemed to us that the payment of a license fee is for the purpose of procuring a privilege in the exercise of which a party should be protected or immune from punishment while doing the thing which he is licensed to do; that if the privilege is accorded and the immunity from punishment afforded the debt may be said to have been thereby incurred, but unless the privilege is accorded and the immunity afforded it seemed to us then somewhat difficult to discover how or upon what principle it could be said that the party owed for the privilege. In case of a mere tax on a business, there is no privilege or immunity conferred.

We find the case of *Stevenson* v. *Hunter*, 2 N. P., 300, decided by Judge Pugsley and affirmed by this court. I am not sure whether it went any further. That was an action under the Dow law to recover a tax from a party who had carried on business in a township where, under the township local option law, the business was prohibited, and the law as laid down in that case is very well stated in the syllabus as follows:

"An assessment can be lawfully made under the 'Dow law' upon the business of trafficking in intoxicating liquors in a township which has voted against the sale of intoxicating liquors under the 'township local option act' of March 3, 1888."

It seemed to us when we affirmed the decision of Judge Pugsley, and it seems to us now, that this reasoning is unanswerable, and is well supported by authority. But we were inclined, as I say, upon the hearing of this case, to distinguish between a tax and a license or a fee required to procure a license. The license is one thing and the revenue derived therefrom is another thing, often called a tax. It is generally held that where the amount exacted exceeds the expense of issuing the license and the purpose is a revenue, it is a tax. And yet it seemed to us that where the tax is imposed in order to procure the privilege and it would be unlawful to carry on the business until the privilege had been thus secured, there might be a distinction between a license and a tax, but upon looking into the authorities we find that the view to which we were inclined is not supported, but that it is held generally and without any exception, so far as we have been able to discover, that a debt for a license fee is incurred though the license is not applied for and is not issued, and, though there may be penalties for carrying on the business without a license, the city may recover for the amount of the license fee as a debt owing to the city, if the business is carried on.

Among the authorities we have examined are: *Cincinnati* v. *Beauhausen*, 22 Bull., 421; *Philadelphia* v. *Telephone Co.*, 109 Fed Rep., 55; *Templeton* v. *Tekamah*, 32 Neb., 542; *State* v. *Green*, 27 Neb., 64; *New York* v. *Railway*, 118 N. Y., 389, 390; *State* v. *Bank*, 84 Tenn., 111; *Lexington* v. *Wilson*, 118 Ky., 221.

The judgment of the court of common pleas in this case will be affirmed, and in the case of *Smith* v. *City*, a case of like character where there are no complications about a license fee having been paid or a license issued, it seems entirely clear that the judgment should be affirmed, and it is affirmed.

*Denman & Crane*, for plaintiff in error.

*C. S. Northup*, City Solicitor, and *G. N. Fell*, for defendant in error.